# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE BEARD, et al.,<br><br>               Plaintiffs,<br><br>    v.<br><br>COUNTY OF STANISLAUS, et al.,<br><br>               Defendants. | Case No.  1:21-cv-00841-ADA-SAB<br><br>ORDER DENYING PLAINTIFFS' EX PARTE MOTION FOR MISCELLANEOUS ADMINISTRATIVE RELIEF; PERMISSION TO FILE MOTION FOR CONTEMPT/SANCTIONS FOLLOWING CLOSE OF FACT DISCOVERY<br><br>ORDER VACATING NOVEMBER 16, 2022 HEARING<br><br>(ECF No. 47) |

## I.

### INTRODUCTION

Plaintiffs Shane Beard, Hilda Perez, and N.P.'s (collectively, "Plaintiffs") initiated this action on May 24, 2021.  (ECF No. 1.)  Currently before the Court is Plaintiffs' "Ex Parte Motion for Miscellaneous Administrative Relief; Permission to File Motion for Contempt/Sanctions Following Close of Fact Discovery."  (ECF No. 47 (caption capitalizations removed).)  For the reasons discussed herein, Plaintiffs' *ex parte* motion shall be denied without prejudice to refiling as a properly noticed motion in compliance with the Local Rules and Federal Rules of Civil Procedure.

1

## II.

## BACKGROUND

Plaintiffs initiated this action against Defendant County of Stanislaus ("County") and Defendant social workers Eric Anderson, April Cobbs, Mariela Gomez, David Granados, Stephanie Herrera, Shari Johnson, Shynelle Jones, and Gloria Solorio (collectively "Defendants") on May 24, 2021.  (ECF No. 1.)   The complaint asserts federal and state claims against Defendants for violations of the Fourth and Fourteenth Amendments, Monell liability, intentional infliction of emotional distress, false imprisonment, and violations of the Bane Act arising from the alleged wrongful removal of Minor Plaintiff N.P. from Plaintiff Beard's custody.

A scheduling order issued on October 27, 2021.  (ECF No. 21.)  A pretrial conference was scheduled for June 12, 2023,[1] but no trial date was set.  The schedule was modified once, on July 13, 2022, to continue all discovery deadlines and the dispositive motion deadline pursuant to the parties' stipulated motion.  (ECF Nos. 37, 39.)  It was modified a second time, on October 6, 2022, to continue the expert discovery deadlines pursuant to Plaintiffs' unopposed motion.  (ECF Nos. 42, 45, 46.)  As a result of these modifications, non-expert discovery closed on August 31, 2022; the initial expert disclosure deadline is October 31, 2022; the supplemental expert disclosure deadline is December 12, 2022; and the dispositive motion deadline is February 13, 2023.  (ECF Nos. 39, 46.)

The Court notes the latter modification arose from a September 26, 2022 filing originally titled by Plaintiff as an "Ex Parte Motion for Miscellaneous Administrative Relief; Extension of Time for Expert Witness Disclosures and Dates Related Thereto."  (ECF No. 42 at 6–7 (caption capitalizations removed).)  The Court construed this "*ex parte*" motion as a regularly noticed filing and ordered Defendant to file an opposition or statement of non-opposition.  (ECF No. 43.)  Upon filing of Defendants' statement of non-opposition (ECF No. 45), the Court granted the motion to modify the schedule.  (ECF No. 46.)

Meanwhile, on April 29, 2022, Plaintiffs filed motions to compel compliance with

---

[1] The pretrial conference was originally set before District Judge Dale A. Drozd.  In light of Judge Drozd's transfer to the Sacramento Division, however, the Court acknowledges this pretrial conference date will be reset.

subpoenas they had served on third party entities Stanislaus Family Justice Center ("Family Justice Center") and C.A.I.R.E. Center.  (ECF Nos. 24, 25.)  The Court ultimately granted these motions and ordered the Family Justice Center and C.A.I.R.E. Center to produce documents responsive to Plaintiffs' subpoenas within thirty days of its order, that is, June 16, 2022.  (ECF No. 28.)

The Family Justice Center responded to Plaintiffs' subpoena on June 15, 2022, via letter, in which it stated it did not have any responsive documents other than a "single calendar entry" regarding a visit to the center by Plaintiff Hilda Perez; the center did not, however, produce the calendar entry.  (ECF No. 47 at 2.)  The C.A.I.R.E. Center neither responded to nor produced any documents in response to Plaintiffs' subpoena.  (Id. at 2–3.)

On September 22, 2022, counsel for Plaintiffs contacted the C.A.I.R.E. Center to meet and confer with the center about producing documents in response to Plaintiffs' subpoena.  (ECF No. 47-1 at 2 (Powell Decl.).)  At that time, counsel was informed that the primary manager or director of the C.A.I.R.E. Center was Patricia Tout, an individual recognized by counsel to be a Stanislaus County social worker.  (Id.)  Counsel subsequently "look[ed] a little further online" and discovered that the C.A.I.R.E. Center is not—as Plaintiffs previously understood—a private or third-party entity which merely contracts occasionally with the County of Stanislaus, but an organizational subdivision of the County of Stanislaus's Behavioral Health and Recovery Services.  (ECF No. 47-1 at 2.)  Thereafter, Plaintiffs contacted County, but County refused to address this issue.  (Id. at 3.)

Plaintiffs filed the instant "*ex parte*" motion on October 13, 2022.  (ECF No. 47.)  The matter is currently set for hearing on November 16, 2022.  The fact that a hearing date of November 16, 2022, was set for this matter—among other things—suggests that it is not truly a motion requiring the extraordinary relief afforded under the *ex parte* procedure.  Plaintiffs suggest a lack comprehension of the legal standards they are required to satisfy in order to obtain the various forms of relief they apparently seek, by stating "Plaintiffs admit to confusion on 'which way to go' at this point, for certain an 'ex-parte' application was the first choice due to the time constraints."  (Id. at 3–4.)  However, the Court notes Plaintiffs made an identical assertion to

justify their previous "*ex parte*" motion (ECF No. 42 at 7), to which the Court responded that *ex parte* relief—which "is generally disfavored when relief may be had through a regularly noticed motion"—was not warranted under the circumstances Plaintiffs presented, and furthermore explained to Plaintiffs that their remedy in that instance "would be to file a noticed motion in compliance with the Local Rules and an application to shorten time for hearing the motion.  (ECF No. 43 at 1–2.)

In light of this prior advisement, the Court is somewhat perplexed that Plaintiffs continue to indicate they have "confusion on 'which way to go' at this point."  Furthermore, as this is Plaintiffs' *second* unwarranted "Ex Parte Motion for Miscellaneous Administrative Relief," Plaintiffs are admonished that such motion filing practices, which Plaintiffs have indicated are their "first choice due to [unspecified] time constraints" (ECF No. 47 at 4)—and which appear to seek to circumvent the established filing procedures and timelines set forth under the Local Rules in order to "go to the head of the line in front of all other litigants and receive special treatment," Moore v. Chase, Inc., No. 1:14-cv-01178-SKO, 2015 WL 4636750, at *2 (E.D. Cal. Aug. 3, 2015)—are not well-taken.  Nevertheless, to the extent Plaintiffs or their counsel require further clarity, the Court shall provide such standards herein, and deny the instant *ex parte* motion without prejudice to refiling as one or several properly noticed motions in compliance with the Local Rules, Federal Rules of Civil Procedure, and Ninth Circuit legal standards that follow.

**III.**

**STANDARDS OF LAW**

**A.    Ex Parte Relief**

Once more, the Court is compelled to explain to the parties that *ex parte* motions "are rarely justified."  Mission Power Eng'g Co. v. Cont'l Cas. Co. (Mission Power), 883 F. Supp. 488, 490 (C.D. Cal. 1995).  One court in the Central District of California extensively and aptly discusses the purpose of *ex parte* motions, when they are justified (and when they are not), and how to properly file one, which this Court deems bears repeating here:

> [L]awyers are the principal abusers of what Judge Rymer [of the
> Central District of California] referred to as a "hybrid" form
> of ex parte communication: a request for action by the court made

4

outside the framework of the rules.

These are usually captioned, "Ex parte Application," "Ex parte Motion," or "Ex parte Request." They contain no notice of hearing, though they often ask the court to hold a hearing urgently. They purport to have been served on the other side, and, under the local rules of this district, they contain a declaration of counsel stating that he or she notified the opposing party, usually by telephone, and that the opposing party does or does not oppose the motion.

…

The fact that opposing parties are usually given an opportunity to argue or file opposing papers does not mask the plain truth: these hybrid ex parte motions are inherently unfair, and they pose a threat to the administration of justice. They debilitate the adversary system. Though the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced. Often, the moving party's papers reflect days, even weeks, of investigation and preparation; the opposing party has perhaps a day or two. This is due primarily to gamesmanship. The opposing party is usually told by telephone when the moving party has completed all preparation of the papers and has a messenger on the way to court with them. The goal often appears to be to surprise opposing counsel or at least to force him or her to drop all other work to respond on short notice.

These hybrid ex parte motions also bring out the worst instincts of the lawyers. The moving party's lawyer perceives it to be the unethical conduct of the opposing counsel that made it necessary to file its motion in the first place … The opposing lawyer who has to abandon his other clients to deal urgently with the motion perceives the episode as just another indicator of the maleficence of the adversary.

…

All of this detracts from a fundamental purpose of the adversary system, namely, to give the court the best possible presentation of the merits and demerits of the case on each side. The opposing party can rarely make its best presentation on such short notice. Its lawyers can sometimes be made to appear inept. Anything that tends to give unfair advantage to one side may, however, cause the court to compensate by giving the benefit of the doubt to the other side. This may result, ironically, in the moving party actually suffering an undeserved disadvantage due to the perception that it acted unfairly.

…

Finally, lawyers need to be aware of how sensitive the courts are to the unfairness that results from the flood of unwarranted ex parte motions. Safeguards that have evolved over many decades are built into the Federal Rules of Civil Procedure

and the Local Rules of this court. The rules contemplate that regular noticed motions are most likely to produce a just result. This is because they give the adversary an opportunity to prepare a thorough opposition (and, if needed, an opportunity for oral argument) according to a predesigned, consistent timetable.

…

When an ex parte motion is filed, … the judge drops everything except other urgent matters to study the papers … Other litigants are relegated to a secondary priority. The judge stops processing other motions. Even hearings or trials—where a courtroom full of deserving users of the court are waiting—are often interrupted or delayed.

It is rare that a lawyer's credibility is more on the line, more vulnerable, than when he or she has created this kind of interruption. Lawyers must understand that filing an ex parte motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, "Fire!" There had better be a fire.

…

**What does a proper ex parte motion consist of?**

Improperly prepared ex parte motions exacerbate the problems created by their abusive use. There may be situations that warrant ex parte relief that go unrecognized because of defects in the papers. The converse is also true: lawyers will be able to recognize when ex parte relief is not justified, if they carefully analyze what is needed for a proper motion. Many ex parte motions are denied, not because the underlying request is unwarranted, but because the papers do not show that bypassing the regular noticed motion procedure is necessary.

An ex parte motion should never be submitted by itself. It must always be accompanied by a separate proposed motion for the ultimate relief the party is seeking. Properly designed ex parte motion papers thus contain two distinct motions or parts. The first part should address only why the regular noticed motion procedures must be bypassed. The second part consists of papers identical to those that would be filed to initiate a regular noticed motion (except that they are denominated as a "proposed" motion and they show no hearing date.) *These are separate, distinct elements for presenting an ex parte motion and should never be combined.*

Mission Power, 883 F.Supp. at 490–92 (citing In re Intermagnetics America, Inc., 101 B.R. 191, 193 (C.D. Cal. 1089)) (emphasis in original).

To be clear, to establish that use of the *ex parte* procedure is justified, the party must demonstrate at least one of the following situations is applicable: (1) there is a threat of

immediate or irreparable injury/prejudice if the underlying motion is heard according to regular

noticed motion procedures; (2) there is danger that notice to the other party may result in the

destruction of evidence or the party's flight; or (3) the party seeks a routine procedural order that

cannot be obtained through a regularly noticed motion (*i.e.,* to file an overlong brief or shorten the

time within which a motion may be brought).   Moore, 2015 WL 4636750, at *2 (citations

omitted).

Furthermore, the Court will not grant *ex parte* relief unless "the moving party is without

fault in creating the crisis that requires ex parte relief, or … the crisis occurred as a result of

excusable neglect."   Mission Power, 883 F. Supp. at 492; see also Erichsen v. Cnty. of Orange,

677 Fed. App'x 379, 380 (9th Cir. 2017) (affirming determination that moving parties failed to

meet the "threshold requirement" for *ex parte* relief because "they did not establish they were

'without fault in creating the crisis that requires ex parte relief' ").

The Court additionally notes that Plaintiffs have repeatedly relied on Local Rule 144(c) as

a basis for filing their *ex parte* motions.  To clarify, Local Rule 144 provides:

> The Court may, in its discretion, grant an initial extension *ex parte*
> upon the affidavit of counsel that a stipulation extending time
> cannot reasonably be obtained, explaining the reasons why such a
> stipulation cannot be obtained and the reasons why the extension is
> necessary.   Except for one such initial extension, *ex parte*
> applications for extension of time are not ordinarily granted.

E.D. Cal. L.R. 144(c).  However, Plaintiffs' reliance on this Local Rule is unavailing as Rule 144,

if read in context, pertains to gaining extensions related to the deadline "to respond to a

complaint, cross-claim or counterclaim, or to respond to interrogatories, requests for admissions,

or requests for production of documents." E.D. Cal. L.R. 144(a).  Plaintiffs' motion to modify the

schedule and/or sanctions motions are not expressly contemplated by this section.  Furthermore,

Rule 144(c) applies only to an "initial" *ex parte* extension.  As the Court has noted, Plaintiff

previously filed an "*ex parte*" extension on to modify the scheduling order, which the Court

ultimately granted, despite noting the *ex parte* relief was unwarranted.

The Court also notes Plaintiffs rely on Local Rule 233 as a basis for their *ex parte* motion.

This reliance is also unavailing.  Notably, Local Rule 233 indicates it is intended to address

"miscellaneous administrative matters" such as "motions to exceed applicable page limitations; requests to shorten time on a motion; requests to extend a response deadline; requests to alter a briefing schedule; or requests to alter a discovery schedule that does not affect dispositive motion filing dates, trial dates, or the final pre-trial conference."  See, generally, E.D. Cal. L.R. 233. Importantly, the rule indicates it "may" address these types of motions; it therefore does not always do so.  Here, the motions Plaintiffs purport to file are clearly discovery and sanctions motions to which specific Local Rules and Federal Rules of Civil Procedure apply; thus, they are not "miscellaneous" administrative matters to which Local Rule 233 should be applied.  Indeed, the Court does not find such substantive motions are even implicated by Local Rule 233. Furthermore, the Court is entirely unpersuaded that Plaintiffs' request to alter the scheduling order to reopen fact-discovery—which closed two months ago—in order to file further discovery and sanctions motions, will not consequently affect the deadlines for dispositive motion filings or other deadlines set forth in the schedule.  Plaintiffs certainly have not made such a showing.

Thus, rather than Local Rules 144 or 233, the appropriate course for Plaintiffs seeking to reopen fact discovery is to file a motion to modify the Rule 16 scheduling order, in accordance with the legal standards that follow.

### B.    Modification of the Scheduling Order

Under Federal Rule of Civil Procedure ("Rule") 16, the Court is required to issue a scheduling order as soon as practicable, and the order "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A).  Once a scheduling order has been filed pursuant to Rule 16, the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment."  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992).  A court may modify the schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension."  Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (citing Johnson, 975 F.2d at 609).  However, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Johnson, 975 F.2d at 609 (compiling cases).

1  Thus, if the party seeking the modification "was not diligent, the inquiry should end." Id.

2  When the motion to modify the schedule to continue a deadline is made after the deadline

3  has expired, the Court must also consider excusable neglect.  See Fed. R. Civ. P. 6(b)(1)(B).

4  Courts look at four factors to determine if a party has established excusable neglect: "(1) the

5  danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on

6  judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable

7  control of the movant, and (4) whether the moving party's conduct was in good faith." Pincay v.

8  Andrews, 389 F.3d 853, 855 (9th Cir. 2004) (citing Pioneer Inv. Servs. Co. v. Brunswick Assoc.

9  Ltd. P'ship, 507 U.S. 380, 395 (1993)).

10  Particularly regarding a motion to modify the scheduling order so as to reopen discovery,

11  the Ninth Circuit expressly requires district courts to consider the following factors:

12  
13  
14  
15  

> (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence.

16  City of Pomona v. SQM N. Am. Corp., 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting U.S. ex rel.

17  Schumer v. Hughes Aircraft Co., 63 F.3d 1512, 1526 (9th Cir. 1995)).  "District courts have

18  'broad discretion to manage discovery and to control the course of litigation under Federal Rule

19  of Civil Procedure 16.'"  Hunt v. Cnty. of Orange, 672 F.3d 606, 616 (9th Cir. 2012) (quoting

20  Avila v. Willits Envtl. Remediation Tr., 633 F.3d 828, 833 (9th Cir. 2011)).

21  **C.**  **Sanctions**

22  1.  Contempt Sanctions

23  "[C]ourts have inherent power to enforce compliance with their lawful orders through

24  civil contempt."  Shillitani v. U.S., 384 U.S. 364, 370 (1966); U.S. v. Ayres, 166 F.3d 991, 994

25  (9th Cir. 1999).  Civil contempt sanctions serve "to coerce obedience to a court order, or to

26  compensate the party pursuing the contempt action for injuries resulting from the contemptuous

27  behavior."  CFTC v. Emerald Worldwide Holdings, Inc. (Emerald), No. 2:03-cv-8339, 2004 WL

28  3186580, at *2 (C.D. Cal. Jul. 29, 2004) (quoting Gen. Signal v. Donallco, Inc., 787 F.2d 1376,

1    1380 (9th Cir. 1986)).

2        In order to obtain contempt sanctions, the moving party must demonstrate by clear and

3    convincing evidence that the other party violated "a specific and definite court order by failure to

4    take all reasonable steps within the party's power to comply." Go-Video v. Motion Picture Ass'n

5    of Am., 10 F.3d 693, 695 (9th Cir. 1993).  The moving party need not establish the violations

6    were willful or intentional.  See id.  Once the moving party establishes the violation, the burden

7    shifts to the alleged contemnor to produce evidence justifying his non-compliance.  Emerald,

8    2004 WL 3186580, at *2.  Recognized defenses to civil contempt include (1) substantial

9    compliance, and (2) an inability to comply.  Ayres, 166 F.3d at 994; Fed. Trade Comm'n v. Gill,

10   183 F. Supp. 2d 1171, 1183 (C.D. Cal. 2001).  Good faith or intent in attempting to comply is

11   immaterial.  Pac. Coast Surgical Center, L.P. v. Scottsdale Ins. Co., 2:18-cv-3904, 2019 WL

12   4267764, at *5 (C.D. Cal. July 31, 2019).  With respect to the second defense, the alleged

13   contemnor bears the burden of making "a categorical, detailed showing" of his inability to

14   comply. SEC v. Bankers All. Corp. (Bankers), 881 F. Supp. 673, 683 (D.D.C. 1995); Nat'l Labor

15   Relations Bd. v. Trans Ocean Export Packing, Inc., 473 F.2d 612, 616 (9th Cir. 1973).

16       Once the Court determines a violation has occurred, it has broad authority in fashioning

17   appropriate relief that is reasonably calculated to compel obedience with the prior court order.

18   McComb v. Jacksonville Paper Co., 336 U.S. 187, 193 (1949) ("The measure of the court's

19   power in civil contempt proceedings is determined by the requirements of full remedial relief.").

20   This includes per diem fines, compensatory damages, conditional incarceration, and reasonable

21   attorneys' fees and expenses.  Bankers, 881 F. Supp. at 684; Shillitani, 384 U.S. at 370–71; Perry

22   v. O'Donnell, 759 F.2d 702, 704 (9th Cir. 1985).  The district court "should apply the least

23   coercive sanction (e.g., a monetary penalty) reasonably calculated to win compliance with its

24   orders."  U.S. v. Flores, 628 F.2d 521, 527 (9th Cir. 1980).  Nevertheless, the Ninth Circuit

25   "defer[s] considerably to the judgment of the district court in fashioning the appropriate sentence

26   because of its proximity to the events out of which the contempt springs," and will only disturb

27   the district court's judgment if it has abused its discretion.  Id.

28   ///

10

1         2.     Discovery Sanctions

2         "The discovery process in theory should be cooperative and largely unsupervised by the

3 district court.  But when required disclosures are not made or cooperation breaks down, Federal

4 Rule of Civil Procedure 37 allows a party to move for an order compelling disclosures or

5 discovery."  Sali v. Corona Reg'l Med. Ctr., 884 F.3d 1218, 1219 (9th Cir. 2018); Fed. R. Civ. P.

6 37(a)(1).  Under Rule 37, "[a] party seeking discovery may move for an order compelling an

7 answer, designation, production, or inspection" where "(i) a deponent fails to answer a question

8 asked under Rule 30 or 31; (ii) a corporation or other entity fails to make a designation under

9 Rule 30(b)(6) or 31(a)(4); (iii) a party fails to answer an interrogatory submitted under Rule 33;

10 or (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or

11 fails to permit inspection—as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B).  The party

12 opposing the discovery bears the burden of resisting disclosure.  Bryant v. Armstrong, 285 F.R.D.

13 596, 600 (S.D. Cal. 2012).

14         If the motion is granted or the disclosure or requested discovery is provided after the filing

15 of the motion, the court must order the offending party "to pay the movant's reasonable expenses

16 incurred in making the motion, including attorney's fees" unless "(i) the movant filed the motion

17 before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the

18 opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other

19 circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A).

20         Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that if a party fails to obey

21 an order to provide or permit discovery, the court may issue further just orders, which may

22 include: "(i) directing that the matters embraced in the order or other designated facts be taken as

23 established for purposes of the action, as the prevailing party claims; (ii) prohibiting the

24 disobedient party from supporting or opposing designated claims or defenses, or from introducing

25 designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further

26 proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part;

27 (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of

28 court the failure to obey any order except an order to submit to a physical or mental

1  examination." Fed. R. Civ. P. 37(b)(2)(A).  "Instead of or in addition to the [other sanctions

2  outlined in the Rule,] the court must order the disobedient party, the attorney advising that party,

3  or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the

4  failure was substantially justified or other circumstances make an award of expenses unjust."

5  Fed. R. Civ. P. 37(b)(2)(C).

6                                              **IV.**

7                                        **DISCUSSION**

8        In light of the foregoing legal standards, the Court concludes the extraordinary remedy of

9  *ex parte* relief is not warranted here.  First, the Court notes Plaintiffs' *ex parte* briefing is

10  extremely disorganized and unclear.  For example, the *ex parte* request purports to seek leave to

11  file a motion for contempt and sanctions against the County of Stanislaus and the Family Justice

12  Center.  (ECF No. 47 at 1; ECF No. 47-3 (proposed sanctions motion).)  Plaintiffs maintain *ex*

13  *parte* relief is warranted because they only recently discovered that the C.A.I.R.E. Center is under

14  the management and control of Defendant County of Stanislaus.  (ECF No. 47 at 2–3.)

15        However, it appears the "*ex parte*" relief Plaintiffs are actually seeking is an order

16  reopening fact-discovery so that Plaintiffs may file a motion to compel further responses from the

17  C.A.I.R.E. Center, which Plaintiffs have now determined is not a third-party entity but a

18  subdivision of the County, thereby requiring Plaintiffs to adhere to the discovery deadlines set

19  forth in the scheduling order.  The Court notes this premise may or may not be correct.

20  Regardless, the only time Plaintiffs even suggest they believe such relief is required in order to

21  file the sanctions motions is in a single sentence in the conclusion of their *ex parte* motion.  (See

22  ECF No. 47 at 4.)

23        Again, although Plaintiffs' brief is highly disorganized, does not expressly address the

24  elements of any of the legal standards set forth herein, and confusingly lumps Plaintiffs'

25  requested relief into a singular request to file a sanctions motion—and despite the fact that each

26  separate form of relief requires satisfaction of different legal standards—it appears to the Court

27  that Plaintiffs are actually seeking the following multiple forms of relief: (1) Plaintiffs seek to

28  modify the scheduling order to reopen fact discovery so that they may litigate their discovery

1    requests with respect to the C.A.I.R.E. Center (aka the County); (2) Plaintiffs seek to file the

2    motion to compel against County with respect to the production responses they requested from

3    the C.A.I.R.E. Center; (3) Plaintiffs seek to move for contempt sanctions against the County on

4    the basis that County was aware the entire time that Plaintiffs were seeking documents from the

5    C.A.I.R.E. Center; that County should have responded directly to Plaintiffs' requests since the

6    C.A.I.R.E. Center is an organizational subdivision of the County; but that it chose not to for

7    purposes of deception and gamesmanship; and (4) Plaintiffs seek to move for contempt sanctions

8    against the Family Justice Center for its failure to provide adequate responses to the subpoena.

9    (See ECF No. 47-1 at 2–3.)  In examining each of these forms of relief Plaintiffs actually appear

10   to seek, the Court concludes *ex parte* relief is not warranted as to any of them.

11          1.    Motion to Reopen Discovery

12          Assuming Plaintiffs are correct that the C.A.I.R.E. Center is, in fact, a subdivision of

13   Defendant County of Stanislaus, they would need to reopen discovery in order to propound

14   discovery requests and move to compel responses against County, as pertaining to the C.A.I.R.E.

15   Center.    However, without reaching the merits of Plaintiffs' arguments for reopening

16   discovery[2]—and the Court notes, again, that due to the disorganized structure of Plaintiffs'

17   briefing, including the fact that Plaintiffs do not append a proposed motion to modify the

18   schedule to reopen discovery, and the lack of clear headings to indicate whether Plaintiffs have

19   even addressed any of the factors required by the Ninth Circuit to modify the scheduling order,

20   City of Pomona, 866 F.3d at 1066; Johnson, 975 F.2d at 609—it is apparent that *ex parte* relief to

21   submit such a motion to modify the schedule is unwarranted.  In sum, the fact-discovery deadline

22   expired on August 31, 2022.  (ECF No. 39.)  Therefore, there is no threat of immediate or

23   irreparable injury/prejudice (such as an impending deadline) if the underlying motion is heard

---

[2] This is not to say the Court finds Plaintiffs' underlying request to reopen fact-discovery is unmeritorious. Assuming Plaintiffs' proffers as to Defendant County's malfeasance can be substantiated, Plaintiffs may establish they acted with sufficient diligence to support a modification of the scheduling order based on good cause. Alternatively, even if Plaintiffs did not exercise due diligence in sufficiently and timely researching the C.A.I.R.E. Center on the internet prior to the discovery deadlines, so as to discover at an earlier junction in this litigation that the C.A.I.R.E. Center is (potentially) managed, funded, and operated by Defendant County, it is nonetheless possible that the failure to timely discover this information may amount to excusable neglect and thus still justify modification of the schedule to reopen discovery.

1    according to regular noticed motion procedures.  Moore, 2015 WL 4636750, at *2.  Nor have

2    Plaintiffs argued or established other circumstances exist which would justify *ex parte* relief.  Id.

3         Indeed, the Court is skeptical that Plaintiffs have even exercised due diligence with

4    respect to this discovery dispute.  Notably, the Court granted Plaintiffs' motion to compel

5    subpoenas on May 17, 2022, with productions due by June 16, 2022.  (ECF No. 28.)  Even

6    though the June 16, 2022 deadline came and went with no response from the C.A.I.R.E. Center,

7    Plaintiffs indicate they did not seek to meet and confer with the C.A.I.R.E. Center until

8    September 22, 2022, over three months later, and nearly a month after the non-expert discovery

9    deadline (which had already been modified once, from August 5, 2022, to August 31, 2022).

10   (ECF No. 47-1 at 2; see also ECF Nos. 21, 39.)  Importantly, the Court notes that its scheduling

11   order expressly provides that discovery deadlines will be strictly enforced, and that the

12   discovery/expert cut-off deadlines are the dates by which all discovery must be completed; thus,

13   absent good cause, discovery motions will not be heard after the discovery deadlines.  (ECF No.

14   21 at 3.)  Trial courts "set schedules and establish deadlines to foster the efficient treatment and

15   resolution of cases.  Those efforts will be successful only if the deadlines are taken seriously by

16   the parties."  Wong v. Regents of the Univ. of Cal., 410 F.3d 1052, 1060, 1062 (9th Cir. 2005).

17   "Courts set such schedules to permit the court and the parties to deal with cases in a thorough and

18   orderly manner, and they must be allowed to enforce them, unless there are good reasons not

19   to."  Id.  Therefore, parties must "diligently attempt to adhere to that schedule throughout the

20   subsequent course of the litigation."  Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal.

21   1999).  Here, Plaintiffs do not even attempt to explain why they delayed for so long in seeking to

22   obtain discovery responses.  On this record, even if *ex parte* relief were required, the Court is

23   unpersuaded that Plaintiffs have met the "threshold requirement" for *ex parte* relief of

24   establishing they were either without fault in creating the crisis that requires *ex parte* relief, or

25   that the crisis occurred as a result of excusable neglect.  Mission Power, 883 F. Supp. at 492;

26   Erichsen, 677 Fed. App'x at 380.

27        Thus, the proper route for reopening discovery is for Plaintiffs to file a properly noticed

28   motion to modify the schedule to reopen discovery, in which they address each of the factors—

14

especially due diligence—as required by the Ninth Circuit and Rule 16, and as set forth *supra*. Furthermore, if Plaintiffs believe they can establish good cause exists to shorten the hearing time on the motion, then they may file an *ex parte* motion to do so after they have submitted (or in concurrence with) a properly noticed motion to modify in compliance with the Local Rules (particularly Local Rule 230), Federal Rules of Civil Procedure, and Ninth Circuit legal standards as previously discussed.

> 2.      Motion to Compel Against the C.A.I.R.E. Center via the County

Assuming Plaintiffs' motion to compel discovery requires the reopening of fact discovery, this motion cannot be filed until Plaintiffs request and receive leave from the Court to reopen discovery.  For the same reasons previously addressed, Plaintiffs have not established good cause exists to bring this motion *ex parte* as opposed to filing it as a properly noticed motion pursuant to the Local Rules.

> 3.      Motion for Sanctions Against the County

To the extent Plaintiffs seek contempt sanctions from Defendant County for its purported malfeasance and gamesmanship in failing to disclose the nature about the C.A.I.R.E. Center to Plaintiffs, this request is distinct from Plaintiffs' intent to pursue discovery sanctions that are governed by Rule 37 based on the C.A.I.R.E. Center's failure to produce responses, and therefore constitutes a separate sanctions motion subject to different legal standards.  This is a crucial distinction because, even if Plaintiffs' motion to reopen discovery is denied and they are precluded from further pursuing responses or discovery sanctions from the C.A.I.R.E. Center, Plaintiffs would not necessarily be precluded from seeking non-discovery sanctions against County for its behavior throughout the course of this litigation.  Such a motion, however, has no deadline; therefore, the Court cannot discern any requirement exists for *ex parte* relief.  Rather, the proper course for Plaintiffs in seeking this relief is, again, to file a properly noticed motion pursuant to the Local Rules.

> 4.      Motion to Compel Against the Family Justice Center

Finally, although Plaintiffs haphazardly lump the C.A.I.R.E. Center and the Family Justice Center together in their proposed sanctions and *ex parte* motions, the Court notes these are two

distinct entities, from which Plaintiffs seek different relief due to each entity's individual responses to Plaintiffs' discovery requests, that are subject to different Federal Rules of Civil Procedure.  Namely, assuming Plaintiffs are correct that the C.A.I.R.E. Center is a subdivision of the County, discovery from the C.A.I.R.E. Center should be sought pursuant to Rule 37; whereas, discovery from the Family Justice Center must be sought pursuant to its subpoena, under Rule 45.  Furthermore, unlike the C.A.I.R.E. Center, Plaintiffs are not restrained by the discovery deadlines in the scheduling order to seek an order compelling production and issuing sanctions against the Family Justice Center, because the Family Justice Center is a third-party (or, in any event, Plaintiffs do not argue the Family Justice Center is, like the C.A.I.R.E. Center, a subdivision of Defendant County).  Because there is no deadline to file a motion against the Family Justice Center, there is no requirement for *ex parte* relief as to this discovery motion.  Accordingly, the proper route for Plaintiffs with respect to seeking this form of relief is to file a properly noticed motion in compliance with the Local Rules and Federal Rules of Civil Procedure.

### V.

### CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' "Ex Parte Motion for Miscellaneous Administrative Relief; Permission to File Motion for Contempt/Sanctions Following Close of Fact Discovery" (ECF No. 47) is DENIED, without prejudice to refiling as one or several properly noticed motions in compliance with the Local Rules, Federal Rules of Civil Procedure, and applicable legal standards.  Accordingly, the November 16, 2022 hearing on the motion is VACATED.

IT IS SO ORDERED.

Dated:   **October 20, 2022**

_____
UNITED STATES MAGISTRATE JUDGE

16