# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE BEARD, et al., | Case No. 1:21-cv-00841-ADA-SAB |
| Plaintiffs, | ORDER GRANTING PLAINTIFFS' MOTION FOR SANCTIONS IN PART, ORDERING SANCTIONS, AND ORDERING PRODUCTION WITHIN FOURTEEN DAYS |
| v. | |
| COUNTY OF STANISLAUS, et al., | |
| Defendants. | (ECF Nos. 53, 54, 56, 57) |

**I.**

## INTRODUCTION

Currently before the Court is Plaintiffs Shane Beard ("Beard"), Hilda Perez ("Perez"), and N.P.'s (collectively, "Plaintiffs") motion for an order to show cause why Defendant County of Stanislaus, (referred to as "Defendant" or "County" for purposes of this motion), should not be held in contempt for failure to obey a court order relating to discovery, sanctions in the amount of reasonable attorneys' fees, and an order requiring production of the discovery requested in the initial subpoena.  (ECF No. 53.)  The Court held a hearing on the motion on January 11, 2023.  (ECF No. 57.)  In consideration of the moving, opposition, and reply papers, the exhibits and declarations attached thereto, the arguments presented at the January 11, 2023, hearing, as well as the Court's file, for the reasons explained herein, Plaintiffs' motion shall be granted in part.

## II.

## BACKGROUND

Plaintiff N.P. is the son of Plaintiffs Beard and Perez.  Non-party minors A.S., C.P., V.P., and D.P. are the children of Perez and other partners.  At all relevant times, Beard and Perez lived in separate residences, and N.P. lived primarily with Perez.

On July 12, 2019, a social services referral was generated.  The reporting party alleged that A.S. reported he was touched inappropriately in the shower by V.P., and that V.P. and C.P. hit him on the head but Perez did nothing about it.  An investigation ensued, with the end result that on July 19, 2019, N.P. was removed from Beard's custody and on July 24, 2019, the juvenile court determined at a detention hearing that N.P. needed continued detention.  An amended juvenile dependency petition was filed on August 16, 2019.  The juvenile case eventually concluded on April 15, 2020.

Plaintiffs allege the individual Defendant social workers fabricated information, generally misrepresented the situation, and withheld exculpatory information during their investigation and in their reports and warrant application, notably that N.P. was not involved in the aforementioned situation, was no longer living with V.P. and C.P., and was not in any danger and therefore should not have been removed from Beard's custody.  Plaintiffs further allege Defendant County of Stanislaus promulgates unconstitutional policies and fails to properly train its social workers.

Plaintiffs initiated this action against Defendant County of Stanislaus and Defendant social workers Eric Anderson, April Cobbs, Mariela Gomez, David Granados, Stephanie Herrera, Shari Johnson, Shynelle Jones, and Gloria Solorio on May 24, 2021.  (ECF No. 1.)  The complaint asserts federal and state claims against Defendants for violations of the Fourth and Fourteenth Amendments, Monell liability, intentional infliction of emotional distress, false imprisonment, and violations of the Bane Act.  A scheduling order issued on October 27, 2021.  On March 31, 2022, the Court entered a protective order stipulated to by the parties.  (ECF No. 23.)

On December 29, 2021, Plaintiffs' counsel notified Defense counsel of Plaintiffs' intention to serve subpoenas for documents on the Family Justice Center and C.A.I.R.E. Center.

(ECF No. 24-1 at 2 (Powell Decl.); Id. at 5–6 (Ex. A); ECF No. 25-1 at 2 (Powell Decl.); Id. at 6–7 (Ex. A).)[1]  The following day, December 30, 2021, a process server served the subpoenas on the Family Justice Center and the C.A.I.R.E. Center.  (ECF No. 24-1 at 2; Id. at 8–13 (Ex. B); ECF No. 25-1 at 2; Id. at 10–17 (Ex. B).)  The subpoenas were served on Lisa Mantarro, the executive director of the Family Justice Center, who accepted service on behalf of both the Family Justice Center and the C.A.I.R.E. Center.  (ECF No. 24-1 at 2; Id. at 9; ECF No. 25 at 2; Id. at 11.)

Thereafter, Plaintiffs received no response from the Family Justice Center or the C.A.I.R.E. Center.  (ECF No. 24-1 at 2; ECF No. 25-1 at 2.)  On February 1, 2022, Plaintiffs' counsel sent a letter to the Family Justice Center and to the C.A.I.R.E. Center, requesting a response and providing copies of the December 30, 2021 subpoenas.  (ECF No. 24-1 at 2; Id. at 15–16 (Ex. C); ECF No. 25-1 at 2–3; Id. at 19 (Ex. C).)

On April 11, 2022, Plaintiffs' counsel sent another letter to the Family Justice Center and to the C.A.I.R.E. Center, notifying each of them of Plaintiffs' intent to file motions to compel and again attaching copies of the December 30, 2021 subpoenas.  (ECF No. 24-1 at 3; Id. at 17 (Ex. D); ECF No. 25-1 at 3; Id. at 21 (Ex. D).)  Counsel avers he never received a response from either the Family Justice Center or the C.A.I.R.E. Center.  (ECF No. 24-1 at 3; ECF No. 25-1 at 3.)

On April 29, 2022, Plaintiffs filed motions to compel production of documents against the Family Justice Center and C.A.I.R.E. Center.  (ECF Nos. 24, 25.)  No opposition or other response was filed.  On May 11, 2022, Plaintiffs additionally submitted affidavits of service indicating the motions to compel were personally served on the Family Justice Center and C.A.I.R.E. Center on May 2, 2022.  (ECF Nos. 26, 27.)

On May 17, 2022, the Court granted Plaintiffs' motion to compel and ordered both the Stanislaus Family Justice Center and the C.A.I.R.E. Center to provide all documents responsive to the requests for production identified in Plaintiffs' December 30, 2021 subpoenas within thirty

---

[1]  As the instant motion relates to the previous motion to compel, the Court utilizes the Court's previous summary based on the previous filings, for reference.

1  (30) days of entry of the order, without objections.  (ECF No. 28.)

2  Specifically, the Court previously found Family Justice Center and C.A.I.R.E. Center

3  were properly notified and served subpoenas; that Family Justice Center and C.A.I.R.E. Center

4  neither responded to Plaintiffs' subpoenas or subsequent correspondences, nor filed any

5  opposition to the instant motions; that Defendants had not attempted to protect any of their own

6  rights that might be implicated by the materials requested by Plaintiffs, by opposing the motions;

7  and further, that the production requests, appeared pertinent to the Defendants' social workers'

8  underlying investigation of Plaintiffs, and thus relevant to Plaintiffs' claims in this action.  (ECF

9  No. 28 at 8.)[2]

10  On November 13, 2022, Plaintiff filed an *ex parte* motion to extend the time to file a

11  motion for sanctions following the close of fact discovery, which the Court denied on November

12  20, 2022.  (ECF Nos. 47, 48.)  On October 31, 2022, Plaintiffs filed a renewed motion to reopen

13  discovery, Defendants filed a statement of non-opposition on November 14, 2022, and on

14  November 16, 2022, the Court granted Plaintiffs' unopposed motion to reopen discovery for

15  limited purposes.  (ECF Nos. 49, 51, 52.)

16  On November 30, 2022, Plaintiffs filed the motion for contempt sanctions that is

17  currently before the Court.  (Pls.' Mot. Sanctions ("Mot."), ECF No. 53.)  On December 14,

18  2022, Defendants filed an opposition brief.  (Defs.' Opp'n ("Opp'n"), ECF No. 54.)  On

19  December 22, 2022, Plaintiffs filed a reply brief.  (ECF No. 56.)  On January 11, 2023, the Court

20  held a hearing on Plaintiffs' motion via videoconference.  (ECF No. 57.)  Robert Powell

21  appeared on behalf of Plaintiffs.  Bradley Swingle appeared on behalf of Defendants.  (ECF No.

22  57.)

23  ///

24  ///

25  ///

26  ///

27

28  [2]  The Court incorporates the factual findings and legal conclusions contained in that order by way of reference.

# III.

## LEGAL STANDARD

Rule 37 provides in pertinent part:

> **(a) Motion for an Order Compelling Disclosure or Discovery.**
>
> **(1) *In General*.** On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37.  Rule 37 states that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).

If a motion to compel discovery under Rule 37 is granted, the Court must order the "party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A).  If the motion is denied, the court must "require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," however the court "must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(B).  Where the motion is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).

Further, if a party fails to obey an order to provide or permit discovery, the court may issue further just orders, which may include: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in

whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A).  "Instead of or in addition to the [other sanctions outlined in the Rule,] the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Rule 45 of the Federal Rules of Civil Procedure authorizes the issuance of a subpoena to command a nonparty to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control. . . ."  Fed. R. Civ. P. 45(a)(1)(A)(iii).  In response to the subpoena, the nonparty must serve objections to the request before the earlier of the time specified for compliance or fourteen days after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B.)  If an objection is made, the serving party may move for an order compelling compliance in the court for the district where compliance is required.  Fed. R. Civ. P. 45(b)(1)(B(i).

It is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34.  Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Service Center, 211 F.R.D. 648, 662 (D. Kan. 2003) (quoting Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) that the amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."). Rule 34(a) provides that a party may serve a request that is within the scope of Rule 26.

Under the Federal Rules of Civil Procedure,

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

1    Fed. R. Civ. P. 26(b)(1).

2          A court may sanction a party for failing to obey a discovery order and may treat the

3    failure as contempt of court.  Fed. R. Civ. P. 37(b)(2)(A)(vii).  However, a court may not impose

4    Rule 37(b) sanctions against a nonparty for asserted noncompliance with a subpoena issued

5    under Rule 45.  See Sali v. Corona Reg'l Med. Ctr., 884 F.3d 1218, 1224 (9th Cir. 2018) (other

6    than contempt, "[n]one of the other sanctions available under Rule 37 are available against the

7    nonparty" who fails to comply with a Rule 45 subpoena); see also Pennwalt Corp. v. Durand-

8    Wayland, Inc., 708 F.2d 492, 494 n.4 (9th Cir. 1983) (noting that Rule 37 does not authorize an

9    award of expenses for a motion to compel nonparties to produce documents); Genx Processors

10   Mauritius Ltd. v. Jackson, 2:14-cv-01938-APG-PAL, 2018 WL 5777485, at *9 (D. Nev. Nov. 2,

11   2018) ("The court may not use the enforcement remedies contemplated in Rule 37 for a

12   nonparties' failure to comply with a subpoena") (citing Pennwalt Corp., 708 F.2d at 494)).

13         Under Rule 45, a court may exercise its contempt powers when a person who has been

14   served with a subpoena "fails without adequate excuse to obey the subpoena or an order related

15   to it."  Fed. R. Civ. P. 45(g).  Contempt sanctions are among a court's inherent powers.  See

16   Shillitani v. United States, 384 U.S. 364, 370 (1966) ("There can be no question that courts have

17   inherent power to enforce compliance with their lawful orders through civil contempt."); Ochoa

18   v. Lopez, CV 11-9239 AG (MLGx), 2016 WL 9712071, at *1 (C.D. Cal. June 20, 2016) ("A

19   court has inherent power to enforce its orders by holding those who violate those orders in civil

20   contempt and issuing corresponding sanctions.") (citing Shillitani, 384 U.S. at 370).

21         Civil contempt "consists of a party's disobedience to a specific and definite court order

22   by failure to take all reasonable steps within the party's power to comply."  In re Dual–Deck

23   Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993).  "The contempt 'need

24   not be willful,' and there is no good faith exception to the requirement of obedience to a court

25   order."  Id. (quoting In re Crystal Palace Gambling Hall, Inc., 817 F.2d 1361, 1365 (9th Cir.

26   1987)).  "The party alleging civil contempt must demonstrate that the alleged contemnor violated

27   the court's order by 'clear and convincing evidence,' not merely a preponderance of the

28   evidence."  Id. (quoting Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889

1   (9th Cir. 1982)).

2          The Federal Rules of Civil Procedure provide that the rules "should be construed,

3   administered, and employed by the court and the parties to secure the just, speedy and inexpensive

4   determination of every action and proceeding." Fed. R. Civ. P. 1.  To effectuate this purpose, the

5   rules provide for sanctions against parties that fail to comply with court orders or that

6   unnecessarily multiply the proceedings.  See, e.g., Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 37(b).

7   Rule 16(f) authorizes the Court to issue any just order if a party or attorney fails to obey a

8   scheduling or other pretrial order.  Fed. R. Civ. P. 16(f)(1)(C) ("On motion or on its own, the court

9   may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its

10  attorney . . . fails to obey a scheduling or other pretrial order.").

11         The Court also possesses inherent authority to impose sanctions to manage its own affairs

12  so as to achieve the orderly and expeditious disposition of cases.  Chambers v. NASCO, Inc., 501

13  U.S. 32, 43 (1991).  The Court's inherent power is that which is necessary to the exercise of all

14  others, including to protect the due and orderly administration of justice and maintain the authority

15  and dignity of the Court.  Roadway Exp., Inc. v. Piper, 447 U.S. 752, 764 (1980).  In order to

16  coerce a party to comply with the Court's orders, the Court may issue sanctions for every day that

17  party fails to respond to the Court's orders to show cause.  See Lasar v. Ford Motor Co., 399 F.3d

18  1101, 1110 (9th Cir. 2005) (discussing court's authority to impose civil sanctions "intended to be

19  remedial by coercing the defendant to do what he had refused to do.").

20         Similarly, the Local Rules of the Eastern District of California provide that "[f]ailure of

21  counsel or of a party to comply with these Rules or with any order of the Court may be grounds

22  for imposition by the Court of any and all sanctions authorized by statute or Rule or within the

23  inherent power of the Court."  E.D. Cal. L.R. 110.  Further, "[i]n the event any attorney subject to

24  these Rules engages in conduct that may warrant discipline or other sanctions, any Judge or

25  Magistrate Judge may initiate proceedings for contempt under 18 U.S.C. § 401 or Fed. R. Crim. P.

26  42, or may, after reasonable notice and opportunity to show cause to the contrary, take any other

27  appropriate disciplinary action against the attorney."  E.D. Cal. L.R. 184(a).  "In addition to or in

28  lieu of the foregoing, the Judge or Magistrate Judge may refer the matter to the disciplinary body

1   of any Court before which the attorney has been admitted to practice."  Id.

2           Pursuant to 28 U.S.C. § 636(e)(6)(B)(iii), in a case where the parties have not consented

3   to the jurisdiction of a United States magistrate judge and where a party's conduct "constitutes a

4   civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may

5   serve or cause to be served, upon any person whose behavior is brought into question under this

6   paragraph, an order requiring such person to appear before a district judge upon a day certain to

7   show cause why that person should not be adjudged in contempt by reason of the facts so

8   certified."  28 U.S.C. § 636(e)(6).

9   **IV.**

10   **ANALYSIS**

11        **A.**     **The Parties' Arguments**

12         1.    Plaintiffs' Motion

13           Plaintiffs submit that from the date of the Court's order to compel against the C.A.I.R.E.

14   Center[3] to the date of the filing of this motion, the C.A.I.R.E. Center has not communicated with

15   Plaintiffs' counsel, and has not produced a single document responsive to Plaintiffs' requests in

16   their subpoena.  (Mot. 3.)  Plaintiff highlights the C.A.I.R.E. Center never denied that they are in

17   possession of the types of documents the Plaintiffs seek.  (Id.)

18           While preparing a previously filed motion for contempt against the C.A.I.R.E. Center

19   (ECF No. 47-2), Plaintiffs' counsel states he discovered that the C.A.I.R.E. Center was in fact a

20   subdivision of Defendant County of Stanislaus.  (Mot. 4.)  Specifically, while attempting to

21   contact a supervisor or director with the C.A.I.R.E. Center in order to remind them of their

22   obligation under the May 17 order to produce documents, Plaintiffs' counsel discovered that not

23   only is the C.A.I.R.E. Center an administrative subdivision of Stanislaus County's Behavioral

24   Health and Recovery Services, but also that the C.A.I.R.E. Center is run or headed by Patricia

25   Tout – a licensed social worker with the County.  (Id.)  Thus, Plaintiff submits that the

---

[3]  Plaintiffs' arguments in the motion refers only to the C.A.I.R.E. Center and not the Family Justice Center.
Plaintiffs' conclusion and proposed order only directs action at the County of Stanislaus, in relation to the
production of the C.A.I.R.E. Center interview videos, and requests sanctions against the County of Stanislaus only,
specifically.  (ECF No. 53 at 8-9; 53-2 at 1-2.)

1   C.A.I.R.E. Center is managed, funded and operated by the County, and thus the County and its

2   attorneys have been entirely aware since December of 2021, that Plaintiffs have sought material

3   documents in their possession; and throughout that entire time, the County and its attorneys have

4   been completely silent to Plaintiffs' subpoena, their multiple letters, the motion to compel, and

5   the Court's order to compel.

6          In this regard, Plaintiffs concede they would have elected to make a request for

7   production of documents rather than a Rule 45 subpoena had they been aware of the true nature

8   of the C.A.I.R.E. Center's organizational structure, but in any event, Plaintiffs state they have

9   now been made aware that the C.A.I.R.E. Center itself is funded, managed and operated entirely

10  within the government structure of the County of Stanislaus and thus the County and its

11  attorneys are well aware that Plaintiffs have acquired an order from the Court that documents are

12  to be produced which are in the County's possession.  (Id.)  Thus, Plaintiffs emphasize the

13  County, rather than notifying Plaintiffs that the subpoena was served on a government entity and

14  then request Plaintiffs withdraw the subpoena in lieu of serving a request for production, the

15  County through its attorneys instead elected to do nothing.  Specifically, the County did not

16  respond in writing, email or telephone with any concerns about the subpoena, and did not

17  produce any documents nor serve any objections.  (Id.)  Plaintiffs additionally emphasize that

18  prior to filing of the motion to compel, Plaintiffs' counsel wrote and delivered two letters (one in

19  February and one in April) to the C.A.I.R.E. Center asking them to comply with the subpoena.

20  (See ECF No., 25-1.)  Plaintiffs emphasize that rather than simply notify Plaintiffs that

21  C.A.I.R.E. is a part of the County and will respond only to the request for production under Rule

22  34, the County through its attorneys instead elected to do nothing, again.  (Mot. 5.)

23         Following the filing of the initial motion to compel, Plaintiffs note that rather than mount

24  a defense against the motion to compel directed against one of the County's subunits, or even

25  communicate with Plaintiffs' counsel despite the fact the frequent communications between

26  counsel, the County through its attorneys elected to sit on their hands, fail to respond, and

27  "essentially hope the Court or Plaintiffs wouldn't discover that the C.A.I.R.E Center is a division

28  of the County itself and is run by a County Community Services Agency social worker."  (Id.)

1    Plaintiffs submit that because the County is a party to this action, it has clearly been on notice of

2    the above, including the motion to compel against the C.A.I.R.E. Center and the resulting order

3    following the County's non-response.  In light of this information that Plaintiff suggests was

4    only recently discovered by Plaintiffs, Plaintiffs now move for an order from this Court for

5    contempt and sanctions "not merely against C.A.I.R.E. but against the County of Stanislaus as

6    well for this unbelievable and egregious act of stonewalling, and for the entity's blatant

7    disrespect for the Court and its orders."  (Id.)

8           a.     **Relief Sought by Plaintiffs**

9           Plaintiffs request: 1) an order to show cause against the County of Stanislaus for why it

10   should not be held in contempt for violation of a Court order; 2) an order that the County of

11   Stanislaus is to immediately produce to Plaintiffs copies of the video-recorded C.A.I.R.E. Center

12   interviews of Hilda Perez's son, A.S.; 3) sanctions in the amount of reasonable attorney fees

13   against the County of Stanislaus for failure to follow a Court order and for failing to comply with

14   discovery; and 4) an order specifying "that the Court will advise the jury that should the

15   C.A.I.R.E. interviews be produced[,] that the contents of which should be adversely inferred

16   against the County for purposes of this litigation."  (Mot. 8-9.)[4]

17          Plaintiffs' motion submits that monetary sanctions are appropriate under Federal Rule of

18   Civil Procedure 37(b)(2)(C),[5] as because Defendant has yet to produce any of the documentation

19   requested, their actions cannot be said to be "substantially justified" within the meaning of the

20

21   [4]  It appears Plaintiffs may have meant to request an adverse inference if the videos are not produced, rather than
     "should the C.A.I.R.E. interviews be produced." (Mot. 9.)  In another portion of the motion, Plaintiffs write as "part

22   of the relief Plaintiffs seek by this Motion, is an order that if the full video . . . is not produced forthwith, there will
     be an adverse inference instruction that specifies the jury must treat the content of the forensic interviews adversely

23   against the County of Stanislaus."  (Mot. 6.)  At the hearing, Plaintiffs' counsel emphasized the preservation of
     issues regarding adverse inferences following production/non-production of the videos, and the Court accepts such
     sanction may be appropriate at a later junction, and reserves specific judgment on an adverse inference ruling.  See

24   Singh v. Bunch, No. 115CV00646DADBAM, 2018 WL 6111663, at *5 (E.D. Cal. Nov. 21, 2018) ("The Court also
     finds that evidentiary sanctions are necessary to prevent prejudice to Defendants due to Plaintiffs' failure to

25   cooperate with discovery . . . Plaintiffs' refusal to participate in discovery has unnecessarily delayed the duration of
     this case by several months and prevented Defendants from acquiring basic information about Plaintiffs' claims.

26   Given that the Court has already issued an order compelling discovery, and repeatedly warned Plaintiffs that their
     conduct in litigating this case is causing delays and could lead to sanctions, the Court finds that lesser sanctions

27   would not be effective.").

28   [5]  The Court discusses below the issues regarding the interplay between Rule 45, Rule 37, the Plaintiffs' motions as
     submitted, and the Court's previous order granting Plaintiffs' motion to compel.

1  Rule.  Plaintiffs seek a total of $9,277.50 in fees.  (Mot. 7-8.)

2        2.    <u>Defendant County's Opposition</u>

3        First, Defendant submits a declaration of Patricia Tout ("Tout"), who is employed by the

4  Stanislaus Community Services Agency as a Manager IV, and is also the manager of the

5  C.A.I.R.E. Center.  (Decl. Patricia Tout Supp. Opp'n ("Tout Decl."), ECF No. 54-1 at 1.)  Tout

6  proffers she is familiar with Plaintiffs' counsel as one who has filed a number of lawsuits against

7  the County of Stanislaus; that she has no recollection of any subpoena being served on the

8  C.A.I.R.E. Center from his office; and had she been aware, she would have reached out to the

9  Community Services Agency to bring the issue to the agency's attention.  (Opp'n 2; Tout Decl.

10  ¶¶ 1-5.)

11        Second, Defendant argues Lisa Mantarro ("Mantarro") is the Director of the Family

12  Justice Center that shares office space with the C.A.I.R.E. Center; that the Family Justice Center

13  is not affiliated with the C.A.I.R.E. Center; that Mantarro is not the agent for service of process

14  on any subpoena directed to the County of Stanislaus or the C.A.I.R.E. Center; and the

15  Community Services Agency's window, located at a separate address, is the only location

16  authorized to accept subpoenas for child welfare records, which also include subpoenas directed

17  to the C.A.I.R.E. Center, and thus it was not properly served.  (Opp'n 3; Tout Decl. ¶ 4 ("The

18  Community Services Agency's administration window located at 251 E. Hackett Road in

19  Modesto, California, is the only location authorized to accept subpoenas for child welfare

20  records which also includes subpoenas directed to the CAIRE Center.").)

21        Defendant next proffers the C.A.I.R.E. Center works with various law enforcement

22  agencies in Stanislaus County to provide a place where the agencies can interview children to

23  determine if a child has been subjected to abuse, neglect, or crime; and these interviews can be

24  used as a discovery tool to determine if a crime has been committed against the child and

25  whether a referral to the District Attorney's office should be made.  (Opp'n 3; Tout Decl. ¶ 2.)

26  Defendant submits these interviews are the property of the law enforcement agency that

27  conducted the interview and any subpoena seeking a copy of a videotaped interview with a child

28  obtained at the C.A.I.R.E. Center must be directed to the law enforcement agency that

1   interviewed the child as the C.A.I.R.E. Center is unable to legally comply with the subpoena.

2   (Opp'n 3; Tout Decl. ¶¶ 2, 6, 7.)

3          Finally, Defendant argues there can be no contempt, as the C.A.I.R.E. Center has no

4   recollection of receiving the subpoena; it was not properly served; and even if it was properly

5   served, the Center does not have the ability to comply with the subpoena for the reasons set forth

6   in the Tout Declaration.  (Opp'n 3-4, citing In re Ivey, 85 Cal. App. 4th 793, 798, 102 Cal. Rptr.

7   2d 447 (2000) ("As a general rule, the elements of contempt include (1) a valid order, (2)

8   knowledge of the order, (3) ability to comply with the order, and (4) willful failure to comply

9   with the order."); United States v. Drollinger, 80 F.3d 389, 393 (9th Cir. 1996) ("Present

10   inability to comply is a complete defense to civil contempt.").)  Specifically, Tout declares that

11   even if properly served, "the Center would be unable to release the video as it is property of the

12   law enforcement agency that requested the interview," and it would be "unlawful for the

13   C.A.I.R.E. Center to release the video."  (Tout Decl. ¶ 6.)  Defendant submits that as the

14   C.A.I.R.E. Center is unable to comply with the subpoena, attorneys' fees or monetary sanctions

15   cannot be awarded to Plaintiffs against Defendants.

16          **B.**      **The Court Shall Grant Plaintiffs' Motion in Part**

17          Plaintiffs' replies are pointed to Defendant's arguments, and the Court turns to directly

18   incorporate them into the Court's analysis rather than summarizing in the above section.

19   Plaintiff replies that Defendant offers no substantial justification for its refusal to meaningfully

20   respond, in any capacity, to Plaintiffs' subpoena, two letters, motion to compel, order to produce

21   documents, and emails.  (Reply 2.)  The Court agrees.

22          Notwithstanding the fact the Court already previously found service to be sufficient in the

23   original order on the motion to compel as there was no opposition filed at that time, the Court

24   will touch upon the arguments regarding service, as that is a major part of Defendant's

25   opposition.  Significantly, Plaintiffs respond to Tout's proffer that the Community Services

26   Agency's administration window at 251 E. Hackett Road in Modesto, California, is the only

27   location authorized to accept subpoenas for child welfare records, including subpoenas directed

28   to the C.A.I.R.E. Center.  On December 30, 2021, Plaintiffs served the subpoena on the

1   aforementioned Montarro at 1418 J Street (the offices of both the C.A.I.R.E. Center and the

2   Family Justice Center of Stanislaus), and on January 3, 2022, Plaintiffs served a "courtesy copy"

3   of the subpoena on the Community Services Agency at 251 E. Hackett Road in Modesto. (Reply

4   2.)   Thus, Plaintiffs indeed have highlighted that the initial motion to compel contains evidence

5   that Plaintiffs had served a copy of the subpoena at 251 E. Hackett Road, at least with at least a

6   "courtesy copy."   Specifically, the attached proof of service provides that service occurred on

7   January 3, 2022, on a "Jane Doe (Authorized Agent) Stanislaus County Community Services

8   Facility [physical description] . . . 251 E. Hackett Rd., 2nd Fl., Modesto, CA." (ECF No. 25-1 at

9   13.)   Plaintiffs further proffer that per their process server Richard Berberian, that Lisa Montarro

10   stated she would accept service of the subpoena for the C.A.I.R.E. Center videos, and suggest

11   that considering both entities shared the same office space, it was reasonable for Mr. Berberian

12   to conclude that Montarro had the capacity to accept service on behalf of the C.A.I.R.E. Center.

13   (Reply 2 n.1.)[6]

14          Plaintiffs state the document was described the copy to the Community Services Agency

15   as a "courtesy copy" because, as stated in Plaintiffs' motion for sanctions, they were unsure of

16   the relationship between the C.A.I.R.E. Center and the County of Stanislaus' Community

17   Services Agency.   Plaintiffs note the subpoena, itself, is explicitly made out to "Custodian of

18   Records for Stanislaus County Behavioral Health and Recovery Services: Child Welfare

19   C.A.I.R.E. Center."   Plaintiffs further emphasize the two letters Plaintiffs' counsel sent following

20   a lack of the response to the subpoena were also served on the Community Services Agency at

21   251 E. Hackett Road, "out of an abundance of caution."   (See ECF No. 25-1, Exs. C, D.)   Thus,

22   Plaintiff argues that even if the County somehow failed to receive the copy of the subpoena

23   served on it on January 3, 2022, the County certainly knew from the February 1 and April 11

24   letters that Plaintiffs had served such a subpoena, and Plaintiffs additionally enclosed copies of

25   the subpoena with each letter sent to the Community Services Agency.   Plaintiffs submit the

26   C.A.I.R.E. Center/Community Services Agency therefore had notice that Plaintiffs were seeking

27   ───────────────
    [6]  It is not clearly referenced if this affirmation appears in the proof of service, however, the Court notes the proof of
    service states the subpoena was served on "Lisa Montarro (Authorized Agt) C.A.I.R.E., 1418 "J" Street, Modesto,
28   CA 95354."  (ECF No. 25-1 at 11.)

1   documents in their possession by way of subpoena, and instead of reaching out to inform

2   Plaintiffs that 1418 J Street was not the proper location to serve a subpoena on the C.A.I.R.E.

3   Center, Defendant County elected to do nothing.

4          The Court considers the above arguments further provide evidence that service was

5   proper, or at least all relevant entities were put on notice regarding the initial subpoena, even

6   separate from the additional communications and initial motion to compel.  S.E.C. v. Internet

7   Sols. for Bus. Inc., 509 F.3d 1161, 1163 (9th Cir. 2007) ("[A] signed return of service constitutes

8   prima facie evidence of valid service which can be overcome only by strong and convincing

9   evidence.").  The Court agrees with Plaintiffs that Defendant County offers no convincing legal

10  argument nor any "strong and convincing evidence" by way of the Tout declaration proffering no

11  recollection of service.  Further, the Court need not consider issues of service anew because

12  arguments regarding service were waived when service was not challenged even in the initial

13  motion to compel, let alone at the time the documents were purportedly served in December of

14  2021, and January of 2022.  (ECF No. 28 at 8 ("[T]he Family Justice Center and C.A.I.R.E. Center

15  were properly notified and served subpoenas . . . Family Justice Center and C.A.I.R.E. Center neither

16  responded to Plaintiffs' subpoenas or subsequent correspondences, nor filed any opposition to the

17  instant motions [and] [n]or have Defendants attempted to protect any of their own rights that might

18  be implicated by the materials requested by Plaintiffs, by opposing the motions.").)

19         As for Defendant's argument that it would be legally unable to comply with the subpoena

20  even with the presumption that the subpoena was properly served because the video recordings

21  Plaintiffs seek are the property of law enforcement, the Court agrees with Plaintiffs that at this

22  juncture, Defendant's argument is unavailing in that Defendant cites no laws or regulations, nor

23  do they refer to any law enforcement or County policies supporting the contention.  Further, the

24  Court finds this to be no justification for the lack of any substantive responses or objections, to

25  the subpoena or the motion to compel, and the order compelling production.  As Plaintiffs

26  highlight, the time for raising this objection has long passed; the C.A.I.R.E. Center was found by

27  the Court to have been properly served with the subpoena; Plaintiffs served the motion to compel

28  on the C.A.I.R.E. Center as well at 251 E. Hackett Road in Modesto (ECF No. 26); the

C.A.I.R.E. Center failed to oppose Plaintiffs' motion to compel; and the Court further found that the County was also provided with an opportunity to reach out to the C.A.I.R.E. Center or "timely intervene to protect their own interests."  (ECF No. 28 at 8.)  The Court must find that the C.A.I.R.E. Center and the County of Stanislaus have waived any objections to Plaintiffs' subpoena and their motion to compel by their failure to respond, in any way, to the repeated notices they were given that Plaintiffs were seeking their documents.

If the documents are not in the custody or control of the responding parties, then the response should state so, however, there have been no responses at all.  See United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452 (9th Cir. 1989) (The party to whom a subpoena for records is issued must produce only those records which are in his possession, custody or control).  Further, Defendant County may very well have an obligation to obtain the documents.  See Gorrell v. Sneath, 292 F.R.D. 629, 632 (E.D. Cal. 2013) ("Actual possession, custody or control is not required.  A party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document.") (citations and quotation marks omitted).  The Court finds Plaintiffs have met their burden of establishing control of the documents at this stage, as Defendant has provided no convincing legal authority for the Court to find otherwise, other than generalized legal conclusions contained in the Tout Declaration.  See Micron Tech., Inc. v. Tessera, Inc., No. C06-80096 MISC.JW(HR, 2006 WL 1646133, at *1 (N.D. Cal. June 14, 2006) ("The legal right to obtain documents on demand and the practical ability to obtain documents on demand are two distinct things.  Legal right suggests an ownership interest, a binding contract, a fiduciary duty, or some other legally enforceable arrangement.  A party seeking production of documents bears the burden of establishing the opposing party's control over those documents.") (citations omitted).  The Court finds production without objections is required.

The Court now turns to issues regarding the interplay between Rule 45 and Rule 37 in relation to the previous motion to compel, the Court's order on the motion to compel, and the instant motion.  Plaintiffs' initial motions to compel were brought pursuant to Rule 45(g).  (ECF

1   Nos. 24, 25.)  As noted by Plaintiffs because they were under the belief the entities were third-

2   party entities separate from the County.  Accordingly, the Court's May 17, 2022, order on the

3   motions to compel, that were unopposed, was grounded in Rule 45 pertaining to the subpoenas,

4   and did not mention Rule 37.  (ECF No. 28.)  Despite this, **Plaintiff incorrectly submits to the**

5   **Court** in the current motion that the Court's May 17, 2022, order was grounded in Rule 37: "[a]s

6   an important prerequisite, a Court order compelling the production of discovery has already been

7   imposed on the C.A.I.R.E. Center pursuant to Rule 37(a)."  (Mot. 5.)  As noted above, Plaintiffs

8   "concede that they would have elected to make a Request for Production of Documents rather

9   than a Rule 45 subpoena had they been aware of the true nature of the C.A.I.R.E. Center's

10  organizational structure, but in any event, Plaintiffs have now been made aware that the

11  C.A.I.R.E. Center itself is funded, managed and operated entirely within the government

12  structure of the County of Stanislaus and thus the County and its attorneys are well aware that

13  Plaintiffs have acquired an order from the Court that documents are to be produced which are in

14  *the County's possession*."  (Mot. 4 (emphasis in original).) [7]

15       Although not raised in opposition, *at all*, with Defendant only focusing on service (an

16  issue already addressed by the Court in the previous motion to compel), and an apparent inability

17  of C.A.I.R.E. to legally comply, the Court attempts to address these potential issues in the most

18  legally prudent, and efficient manner.

19       Turning to the some of the legal issues surround the enforcement mechanisms between

20  the rules, as noted above, a court may sanction a party for failing to obey a discovery order and

21  may treat the failure as contempt of court under Rule 37, however, a court may not impose Rule

22  37(b) sanctions against a nonparty for asserted noncompliance with a subpoena issued under

23  Rule 45.  See Sali, 884 F.3d at 1224 (other than contempt, "[n]one of the other sanctions

24  available under Rule 37 are available against the nonparty" who fails to comply with a Rule 45

25

26  [7]  The website for the agency has a heading entitled: "Stanislaus County Behavioral Health And Recovery Services: Child Welfare CAIRE Center," and the website states that the CAIRE Center is co-located with the Stanislaus County Family Justice Center, and that the information on the website is provided by the Stanislaus County Department of Mental Health.  See

27

28  https://stanislaus.networkofcare.org/mh/services/agency.aspx?pid=StanislausCountyBehavioralHealthandRecoveryServicesChildWelfareCAIRECenter_182_2_0 (last accessed January 13, 2023).

subpoena).  The Ninth Circuit just addressed a somewhat similar situation in an unpublished opinion, however there, the subpoenaed non-parties were never averred or found to be an agency or subunit, or in some sort of privity with a party, as here, and there, the district court improperly imposed sanctions on the nonparty without a finding of contempt.  See Beverly v. Interior Electric Incorp. Nevada, No. 21-55645, 2023 WL 142544, at *1 (9th Cir. Jan. 10, 2023) ("Interior eventually filed, in the Central District of California, a motion to compel production of documents under Rule 45 of the Federal Rules of Civil Procedure and for attorney's fees incurred in bringing the motion.  The district court granted the motion to compel, and cited Rule 45 in that order.  A few months later, the district court granted Interior's request for attorney's fees, but the court cited Rule 37(b)(2)(C) in that order.  The district court, however, did not find the non-parties in contempt, either in the order granting the motion to compel or in the later order granting Interior's request for attorney's fees.").

While the Court imposes the sanctions directly on the County, the Court does note it does not consider Defendant C.A.I.R.E. to be a "stranger" to this litigation, but now it is undisputed in the papers before the Court that C.A.I.R.E. is an agency unit of the County, and the County indeed presented arguments on behalf of C.A.I.R.E. in the instant opposition, and thus the traditional protections against nonparties are not as present when considering subpoena responses.  See In re Mod. Plastics Corp., No. 09-00651, 2015 WL 13866302, at *6 (Bankr. W.D. Mich. July 23, 2015) ("Central to any inquiry under either set of rules [37 and 45] is the goal of avoiding 'undue burdens' associated with discovery, with a particular solicitude for strangers to the litigation."), aff'd, 577 B.R. 690 (W.D. Mich. 2017), aff'd sub nom. In re: Mod. Plastics Corp., 890 F.3d 244 (6th Cir. 2018); see also In re Dunne, No. 3:17-CV-1399 (MPS), 2018 WL 4654698, at *8 (D. Conn. Sept. 27, 2018) ("Rule 37 is targeted at parties and their *representatives* who resist discovery . . . the majority of district courts in the Circuit have found that Rule 37 cannot support sanctions for a non-party's failure to comply with a Rule 45 subpoena.") (emphasis added).

Nonetheless again, here the Court declines to make a finding of contempt against either the party or nonparty, and will instead award attorneys' fees to Plaintiffs in relation to the

1   Defendant County's role in noncompliance with the discovery at issue, and specifically in
2   relation to its relationship with C.A.I.R.E., and its actions to the Plaintiffs and before the Court in
3   relation to such discovery, recognizing the procedural issues stemming from the legal rules the
4   motions were initially filed under and directed at the entities under Plaintiffs' presumption they
5   were separate nonparties from the County.  Specifically at this juncture, the Court finds the
6   record insufficiently developed to certify a factual record of contempt to the District Judge,
7   particularly given the time that has lapsed since the initial motion to compel was granted, the fact
8   there is a lack of specific records and dates confirming a course of attempted communications
9   with the Defendant or C.A.I.R.E., between the date of the order compelling and this motion,
10  which the Court finds that joins with the issues surrounding the manner Plaintiffs' motions were
11  filed with Rule 37 and Rule 45, to guide the Court to conclude a finding of contempt not prudent.

12          The Court does find sanctions in the form of attorneys' fees properly imposed against
13  Defendant County, whether under the discovery rules (in conjunction with waiver of procedural
14  deficiencies not raised by Defendant in response to any of the motions), other Rules of
15  procedure, or the Court's inherent authority (short of a finding of civil contempt that would
16  require findings and recommendations to the District Judge, and in the Court's opinion, again,
17  further evidentiary support and briefing by all parties).  The court accepts the Plaintiffs' proffers
18  and evidence concerning  the agencies to be part and under control of an arm of the County, and
19  County has not expressly disputed such in the motion or at the hearing.  Defendant did not raise
20  any procedural deficiency arguments regarding the interplay between Rule 37 and Rule 45 in the
21  opposition or at the hearing – instead focusing arguments on service (which was already
22  adjudicated as unopposed), and arguing the agency cannot legally produce the documents.  The
23  Court considers any argument regarding procedural deficiencies unaddressed and waived.
24  Defendant had clear notice as to the initial motion and the instant motion, and had ample
25  opportunity to address any arguments then and now, and did not do so.

26      Again, Rule 16(f) authorizes the Court to issue any just order if a party or attorney fails to
27  obey a scheduling or other pretrial order. Fed. R. Civ. P. 16(f)(1)(C) ("On motion or on its own,
28  the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a

1  party or its attorney . . . fails to obey a scheduling or other pretrial order."); see also Fed. R. Civ.

2  P. 1 (the rules "should be construed, administered, and employed by the court and the parties to

3  secure the just, speedy and inexpensive determination of every action and proceeding."); HI.Q,

4  Inc. v. ZeetoGroup, LLC, No. MC 22CV1440-LL-MDD, 2022 WL 17345784, at *9 (S.D. Cal.

5  Nov. 29, 2022) ("Finally, resolving the dispute here promotes judicial economy. This Court

6  considers Health IQ's motion and the subpoenas at issue within the policy enshrined in Rule 1

7  that "[t]hese rules ... should be construed, administered, and employed by the court to secure the

8  just, speedy, and inexpensive determination of every action . . . concerns about judicial economy

9  are particularly acute in cases like this, where the serving party made several unsuccessful

10  attempts to resolve the nonparty's complaints," and construing motion to compel as under Rule

11  45 rather than Rule 37); In re Lithium Ion Batteries Antitrust Litig., No. 13-MD-2420 YGR,

12  2018 WL 11264985, at *2 (N.D. Cal. July 2, 2018) ("A court, acting within its inherent powers,

13  may award monetary sanctions or "fashion an appropriate sanction for conduct which abuses the

14  judicial process." (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44–46 (1991))); Grimes v.

15  City & Cty. of San Francisco, 951 F.2d 236, 240 (9th Cir. 1991) (certain proscriptive "sanctions

16  are non-dispositive matters which may be imposed directly by a magistrate" judge); see also 28

17  U.S.C. § 636(e)(4) (limiting a magistrate judge's authority to hold parties in contempt, but

18  stating, "[t]his paragraph shall not be construed to limit the authority of a magistrate judge to

19  order sanctions under any other statute, the Federal Rules of Civil Procedure, or the Federal

20  Rules of Criminal Procedure."); Williams v. Condensed Curriculum Int'l, No.

21  20CV05292YGRRMI, 2021 WL 6621071, at *3 (N.D. Cal. Dec. 29, 2021) ("A magistrate

22  judge's authority to impose discovery sanctions turns first on whether the order is construed as

23  non-dispositive or dispositive . . . [p]roscriptive sanctions which are designed to compel

24  compliance with a discovery order are deemed not to be dispositive matters [and] [n]or is a

25  finding of contempt a necessary prerequisite for imposing such coercive sanctions.").

26      In sum, given the above law, the Court cannot impose monetary sanctions against a nonparty

27  pursuant to Rule 37, for noncompliance with a Rule 45 subpoena.  Herein, the Court finds it

28  appropriate to award attorneys' fees to Plaintiffs as a sanction against Defendant County for

1  noncompliance with the Court's previous discovery order given the agency is not disputed to be
2  a subunit of the County; the County mounted no defense to the initial motion to compel; and the
3  County wasted the resources of the Plaintiffs and of the Court in not responding to the initial
4  motion despite now stepping in to substantively file an opposition to this motion whereby
5  defense counsel is essentially representing the County's position as being the same or in
6  accordance with C.A.I.R.E., and is representing its legal interests.

7       The Court now turns to determine what amount of attorneys' fees is appropriate.

8  **C.    Fee Determination**

9       Having determined that an award of some reasonable expenses is warranted, the Court
10  now turns to calculate appropriate and reasonable attorneys' fees.  "[U]nder federal fee shifting
11  statutes the lodestar approach is the guiding light in determining a reasonable fee."  <u>Antoninetti</u>
12  <u>v. Chipotle Mexican Grill, Inc.</u>, 643 F.3d 1165, 1176 (9th Cir. 2010) (internal punctuation and
13  citations omitted); <u>see also</u> <u>Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.</u>, No.
14  17CV1943-LAB-LL, 2019 WL 3769191 (S.D. Cal. Aug. 9, 2019) (applying lodestar to calculate
15  reasonable attorneys' fees under Rule 37)(b)(2)(C) for failure to comply with discovery order).
16  The Ninth Circuit has explained the lodestar approach as follows:

17       The lodestar/multiplier approach has two parts.  First a court
18       determines the lodestar amount by multiplying the number of
         hours reasonably expended on the litigation by a reasonable hourly
19       rate.  The party seeking an award of fees must submit evidence
         supporting the hours worked and the rates claimed.  A district court
20       should exclude from the lodestar amount hours that are not
         reasonably expended because they are excessive, redundant, or
21       otherwise unnecessary.  Second, a court may adjust the lodestar
         upward or downward using a multiplier based on factors not
22       subsumed in the initial calculation of the lodestar.  The lodestar
         amount is presumptively the reasonable fee amount, and thus a
23       multiplier may be used to adjust the lodestar amount upward or
         downward only in rare and exceptional cases, supported by both
24       specific evidence on the record and detailed findings by the lower
         courts that the lodestar amount is unreasonably low or
25       unreasonably high.

26  <u>Van Gerwin v. Guarantee Mut. Life Co.</u>, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citations
27  and punctuation omitted).

28       Under the lodestar method, the Court will first determine the appropriate hourly rate for

1  the work performed, and that amount is then multiplied by the number of hours properly
2  expended in performing the work.  Antoninetti, 643 F.3d at 1176.  The district court has the
3  discretion to adjust the number of hours claimed or the lodestar, but is required to provide a clear
4  but concise reason for the fee award.  Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992).
5  The lodestar amount is to be determined based upon the prevailing market rate in the relevant
6  community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).

7          1.     Reasonable Hourly Rates

8          The lodestar amount is to be determined based upon the prevailing market rate in the
9  relevant community, Blum, 465 U.S. at 896 (1984), which in this matter is the Fresno Division
10  of the Eastern District of California.  "To inform and assist the court in the exercise of its
11  discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the
12  attorney's own affidavits—that the requested rates are in line with those prevailing in the
13  community for similar services by lawyers of reasonably comparable skill, experience and
14  reputation."  Blum, 465 U.S. at 895 n.11.

15          Plaintiffs' filing indicates an attorney fee rate of $750.00 per hour for counsel Robert
16  Powell ("Powell"), a paralegal rate of $150.00 per hour for paralegal Mari Carrington
17  ("Carrington"), and a paralegal rate of $175.00 for Sean Reichhold ("Reichhold").  (See ECF No.
18  53-1 at 5-6.)  However, the declaration of counsel does not provide any information to support a
19  finding that $750.00 is a reasonable rate for attorneys' fees in this community.  For example,
20  counsel notes he is licensed to practice before all superior courts of the State of California, all
21  Ninth Circuit District Courts and is a member in good standing to the bar to the U.S. Supreme
22  Court (Powell Decl. ¶ 1), but he does not indicate how many years he has been practicing law,
23  what area/s he has practiced in, or any other experiential information that would assist the Court
24  in determining a reasonable lodestar amount.  Nor has counsel presented caselaw regarding the
25  prevailing market rate in the relevant community which, in this matter, is the Fresno Division of
26  the Eastern District of California.  Plaintiffs attach a declaration of an expert on attorneys' fees
27  submitted in one case in which Plaintiffs' counsel was awarded fees at the hourly rate of
28  $750.00.  (Powell Decl. ¶ 12, Ex. F, ECF No. 53-1 at 8, Decl. Richard Pearl submitted in

1    Steward v. Cnty. of Santa Clara, No. 18-cv-04119.)  However, this single case, which arises from
2    the Northern District of California, is not indicative of the reasonable rates for services in the
3    Fresno Division of the Eastern District of California.  Indeed, while the declaration of the expert
4    pertaining to attorneys' fees is extensive and well-supported, the Court finds the focus of the
5    reasonableness determination there expressly limited to the San Francisco Bay Area.  (See ECF
6    No. 53-1 at 16 ("Under California law, the hourly rates requested by successful litigants are
7    reasonable if they are 'within the range of reasonable rates charged by and judicially awarded
8    comparable attorneys for comparable work' in the San Francisco Bay Area . . . the foregoing
9    rates are well within the range of rates charged by comparably qualified Bay Area attorneys . . .
10   [m]y opinion is based in part on the numerous findings of reasonable hourly rates made by San
11   Francisco Bay Area courts.").)[8]

12          Thus, the Court relies on its own knowledge of customary legal local rates and
13   experience with the legal market in setting a reasonable hourly rate.  Ingram v. Oroudjian, 647
14   F.3d 925, 926 (9th Cir. 2011).  In the Fresno Division of the Eastern District of California, across
15   a variety of types of litigation generally, attorneys with experience of twenty or more years of
16   experience are awarded $325.00 to $400.00 per hour, attorneys with ten to twenty years of
17   experience are awarded $250.00 to $350.00 per hour, attorneys with five to ten years of
18   experience are awarded $225.00 to $300.00 per hour, and less than $200.00 per hour for
19   attorneys with less than five years of experience.  See In re Taco Bell Wage & Hour Actions, 222
20   F. Supp. 3d 813, 839 (E.D. Cal. 2016) (noting attorneys in Fresno Division with twenty or more
21   years of experience are awarded $350.00 to $400.00 per hour, and attorneys with less than fifteen
22   years of experience are awarded $250.00 to $350.00 per hour); Garcia v. FCA US LLC, No.
23   1:16-cv-0730-JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (awarding $400.00 per
24   hour to attorney with nearly thirty years of experience; $300.00 per hour to attorney with nearly
25   fifteen years of experience; $250.00 per hour to attorney with ten years of experience; $225.00
26   per hour to attorneys attorney with five years of experience; and $175.00 per hour to attorney

27   _____
28   [8]  The expert declaration only generally avers to Powell's experience in relation to bar admission date.  (ECF No. 53-1 at 17.)

                                                    23

with less than five years of experience); <u>Mike Murphy's Enterprises, Inc. v. Fineline Indus., Inc.</u>, No. 1:18-cv-0488-AWI-EPG, 2018 WL 1871412, at *3 (E.D. Cal. Apr. 19, 2018) (awarding attorney with over twenty years of experience the $325.00 per hour requested, the $300.00 per hour requested by attorney with nearly twenty years of experience, and attorney with seven years of experience the requested $250.00 per hour); <u>TBK Bank, SSB v. Singh</u>, No. 1:17-cv-00868-LJO-BAM, 2018 WL 1064357, at *8 (E.D. Cal. Feb. 23, 2018), <u>report and recommendation adopted</u>, No. 1:17-cv-00868-LJO-BAM, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018) (awarding attorneys with over thirty-five years of experience $400.00 per hour, attorney with twenty years of experience $350.00 per hour; and attorney with ten years of experience $300.00 per hour); <u>Phillips 66 Co. v. California Pride, Inc.</u>, No. 1:16-cv-01102-LJO-SKO, 2017 WL 2875736, at *16 (E.D. Cal. Jul. 6, 2017), <u>report and recommendation adopted</u>, No. 1:16-cv-01102-LJO-SKO, 2017 WL 3382974 (E.D. Cal. Aug. 7, 2017) (awarding attorney with twenty-years of experience $400.00 per hour); <u>Roach v. Tate Publ'g & Enters.</u>, No. 1:15-cv-00917-SAB, 2017 WL 5070264, at *10 (E.D. Cal. Nov. 3, 2017) (awarding attorney with sixteen years of experience $325.00 per hour in copyright action); <u>Sanchez w. Frito-Lay, Inc.</u>, No. 1:14-cv-00797-AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015) (in a wage and hour class action finding reasonable rate of $350.00 per hour for attorneys with more than twenty years of experience and $275.00 per hour for attorney with fourteen years of experience).

In a previous order, in the face of any information as to experience and locality pay, this Court already determined $350.00 per hour to be a reasonable rate.  (ECF No. 36 at 20.) Accordingly, based on the absence of any relevant new information submitted that would alter the previous finding, and the Court's own familiarity with the relevant legal market, the Court again finds a reasonable rate for the services of attorney Robert Powell is $350.00 per hour.

Similarly, Plaintiffs do not provide any declarations or other supporting evidence to establish that $150.00 or $175.00 per hour is a reasonable paralegal rate for this matter.  This Court previously determined $115.00 per hour to be a reasonable rate for the paralegal services. (ECF No. 36 at 20.)  The Court again finds $115.00 per hour to be reasonable.  See <u>Trujillo v. Singh</u>, No. 1:16-cv-01640-LJO-EPG, 2017 WL 1831941, at *3 (E.D. Cal. May 8, 2017); <u>accord</u>,

1   e.g., Trujillo v. GH Food Mart, Inc., No. 1:20-cv-00368-AWI-SKO, 2020 WL 4697139, at *7

2   (E.D. Cal. Aug. 13, 2020); Trujillo v. La Valley Foods, Inc., No. 1:16-cv-01402-AWI-BAM,

3   2017 WL 2992453, at *5 (E.D. Cal. Jul. 14, 2017); Trujillo v. Lakhani, No. 1:17-cv-00056-LJO-

4   SAB, 2017 WL 1831942, at *7 (E.D. Cal. May 8, 2017).

5          2.      Reasonable Number of Hours

6          Paralegal Carrington billed 1.0 hours on January 31, 2022, and April 11-13, 2022, related

7   to drafting emails and letters concerning the subpoena.  (ECF No. 53-1 at 5.)   Paralegal

8   Reichhold billed 36.3 hours total on the spreadsheet.  (Id.)  Reichhold billed 13.3 hours drafting

9   the initial motion to compel, between April 20, 2022, and April 26, 2022.  (Id.)  Attorney Powell

10  billed 0.6 hours on January 31, 2022, and April 29, 2022.  (Id.)  The Court declines to award any

11  fees associated with the previous motion to compel and communications leading up to the

12  motion, as no fees' motion was part of that motion, and hence, is too late to now request, and

13  given the above issues relating to the interplay of the legal standards applicable to Rule 37 and

14  Rule 45, and the manner in which those motions were brought.  Accordingly, no fees will be

15  awarded for these entries.

16         Powell billed 3.1 hours between September 22, 2022, and November 30, 2022.  (Id.)  The

17  Court finds these time entries reasonable and not specifically disputed by Defendant.

18         Reichhold then billed 23 hours between September 26, 2022, and November 30, 2022,

19  drafting the contempt/sanctions motion before the Court, as well as for an administrative motion

20  to extend discovery.  The Court notes that arguments could be made regarding Plaintiff delaying

21  filing the motion to compel, and whether time for drafting motions to extend the discovery

22  deadlines should be properly attributed to this subpoena compliance, motion, however,

23  Defendant submitted no direct response to Plaintiffs' request for attorney fees, and did not

24  specifically address the billing entries.  Thus, the Court will not do a line by line analysis of each

25  entry without any assistance from the Defendants.  The Court will however, like in the previous

26  fees request, reduce the overall amount of hours billed by the paralegal during this time period as

27  based on the Court's review of the documents and the entries, the amount of time expended the

28  Court deems excessive in relation to the content of the motions.  The Court also observes that

some of the work had to be redone because of procedurally improper filings by the Plaintiffs, and it is unclear the delineation with such.  (See ECF Nos. 47, 48.)  The Court shall reduce the 23 hours billed by Reichhold during this time by 5 hours, and the Court finds 18 hours reasonable for the work.

Plaintiffs have made no request or supplement regarding time expended on the reply briefing.  The Court finds it reasonable to award an additional 0.5 hours to Robert Powell for appearing at the hearing on this motion.  Further, the Court is not foreclosing Plaintiffs from submitting a supplement as to time expended on the reply briefing and the Court will consider a further addition to the ultimate attorneys' fee determination.

### 3. Reasonable Attorneys' Fee Award

The Court finds that: (1) attorney Robert Powell reasonably expended 3.6 hours at a reasonable rate of $350.00 per hour, for a total of $1,260.00; and (2) paralegal Sean Reichhold reasonably expended a combined total of 18 hours in this action, at a reasonable rate of $115.00 per hour, for a total of $2,070.00.  Accordingly, the Court finds that Plaintiffs are entitled to attorneys' fees in the amount of $3,330.00.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion to for sanctions and to compel filed November 30, 2022, (ECF No. 53), is GRANTED in PART;

2. The Court declines to certify a finding of civil contempt to the District Judge at this time, however, reserves a further determination to do so depending on events subsequent to the issuance of this order;

3. The Court reserves the decision to impose an adverse evidentiary inference until after issuance of this order and depending on future compliance with this order;

4. The C.A.I.R.E. Center, as an agency of Defendant County of Stanislaus, and Defendant County of Stanislaus, as the government entity in control or representing the C.A.I.R.E. Center before this Court in this litigation, shall

produce to Plaintiffs copies of the video-recorded C.A.I.R.E. Center interviews of Hilda Perez's son, A.S.; **within fourteen (14) days** of entry of this order, without objections; and

5.     Defendant County of Stanislaus shall pay Plaintiffs reasonable attorneys' fees in the amount of $3,330.00, **within fourteen (14) days** of entry of this order.

IT IS SO ORDERED.

Dated:    **January 17, 2023**

UNITED STATES MAGISTRATE JUDGE